CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
AGROCORP INTERNATIONAL PTE LTD.
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AGROCORP INTERNATIONAL PTE LTD.

                Plaintiff,

    v.

GLOBAL SEA INTERNATIONAL SA, and,
KOREA LINE CORP.

                Defendants.
------------------------------------------------------------X



07 CV _____ (___)

**VERIFIED COMPLAINT**

Plaintiff AGROCORP INTERNATIONAL PTE LTD. (hereinafter "AGROCORP") by its attorneys, Chalos, O'Connor & Duffy, as and for its Verified Complaint against the Defendants, GLOBAL SEA INTERNATIONAL SA, and, KOREA LINE CORP., alleges upon information and belief as follows:

JURISDICTION

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

## THE PARTIES

2.  At all times material hereto, Plaintiff AGROCORP was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country operating under foreign law with an address and principal place of business at #22-01/02 Chinatown Point, 133 New Bridge Road, Singapore, 059413, Republic of Singapore.

3.  The plaintiff AGROCORP is an international trading house formed in 1990 specializing in the physical trading of agricultural commodities including rice, wheat, pulses & beans, sugar, animal & bird feed, oil seeds and other products.

4.  At all times material hereto, defendant GLOBAL SEA INTERNATIONAL SA (hereinafter "GLOBAL SEA") was and still is a foreign business entity duly organized and existing pursuant to the laws of Panama with no known address other than in care of Korea Line Corp. at Dae-il Building, 43, Insa-dong, Jongno-gu, Seoul 110-741, South Korea.

5.  At all times material hereto, defendant GLOBAL SEA was the registered Owner of the M/V GLOBAL DISCOVERY.

6.  At all times material hereto, defendant KOREA LINE CORP. (hereinafter "KOREA LINE") was and still is a foreign business entity duly organized and existing pursuant to the laws of a Korea with an office and principal place of business at Dae-il Building, 43, Insa-dong, Jongno-gu, Seoul 110-741, South Korea.

7. The defendant Korea Line is engaged in business as an Owner, Manager and Operator of ocean vessels that transport cargoes worldwide in exchange for payments of freight and/or hire in both dedicated liner services and tramp services.

8. At all material times hereto, the defendant KOREA LINE was the disponent Owner, Manager and Operator of the M/V GLOBAL DISCOVERY.

## THE PLAINTIFF AND DEFENDANTS WERE PARTIES TO A MARITIME CONTRACT

9. On June 28, 2007, plaintiff AGROCORP entered into a charter party with defendant KOREA LINE, for itself as disponent owner of the ocean-going vessel M/V GLOBAL DISCOVERY and on behalf of GLOBAL SEA as registered Owner, whereby plaintiff AGROCORP chartered the M/V GLOBAL DISCOVERY to carry AGROCORP's cargo of about 21,000 metric tons of bulk peas from Rouen, France to Karachi, Pakistan and Mumbai, India.

10. The charter party agreement is evidenced by a fixture confirmation that was sent to both the vessel Owners and AGROCORP on June 28, 2007, the fixture confirmation provided a recapitulation of the main terms of the contract and, by reference, the fixture confirmation incorporated other terms and conditions contained in a earlier Continent Grain Charterparty between AGROCORP and another vessel Owner for the charter of the M/V SWIFT dated March 27, 2007.

11. In accordance with the terms and conditions of the charter party agreement, the M/V GLOBAL DISCOVERY was to be presented at Rouen for loading AGROCORP's cargo between the dates of July 1, 2007 and July 9, 2007, which are referred to in the contract as the lay/can days.

12. In accordance with the terms and conditions of the charter party agreement, the defendant AGROCORP agreed to pay freight for the carriage of its cargo from France to Pakistan and India at a rate of $64.60 per metric ton of cargo carried on board the M/V GLOBAL DISCOVERY.

13. In accordance with the terms and conditions of the Continent Grain Charterparty, as incorporated in to the fixture confirmation, the plaintiff and defendant agreed to the terms of the Voyawar 1993 clause that dealt with "War Risks."

14. In accordance with the terms and conditions of the Continent Grain Charterparty, as incorporated in to the fixture confirmation, the plaintiff and defendants agreed to the terms of the BIMCO standard law and arbitration clause, which provided that any and all disputes arising under or about the charter party agreement would be arbitrated in London on accordance with English law.

15. The charter party contract between the Plaintiff and the Defendants is a maritime contract.

## THE DEFENDANTS BREACHED THE MARITIME CONTRACT

16. The M/V GLOBAL DISCOVERY was not presented at Rouen for loading cargo within the dates as agreed to in the charter party and the defendants were in breach of the charter party contract on that point alone.

17. Further, on July 11, 2007 which was after the agreed upon canceling date, the defendant KOREA LINE advised AGROCORP that the M/V GLOBAL DISCOVERY would not perform any voyage to Pakistan in light of recent "terrorist attacks."

18.     The defendant KOREA LINE wrongfully and unilaterally terminated the charter party fixture in apparent reliance on clause 17(2) of Voywar 1993, which under certain limited and specific conditions will entitle a vessel Owner to cancel a contract that will subject its vessel from the risks of war as defined in the Voywar clause.

19.     The unilateral termination of the charter party contract by KOREA LINE was wrongful to the extent that: the conditions allowed for in the Voywar clause did not exist in Karachi, Pakistan; in fact, numerous other vessels were calling at Karachi to load and discharge cargo without incident; and, the claim of "terrorism activities" in Pakistan was nothing more than a wrongful attempt by KOREA LINE to excuse its failure to meet its obligations under the charter party contract between itself and AGROCORP and/or to extract a premium payment from AGROCORP for the voyage to Karachi, Pakistan.

20.     The defendant KOREA LINE, subsequently on July 23, 2007, offered its vessel the M/V CHIEF as a substitute vessel to carry AGRCORP's cargo of bulk peas from France to Pakistan and India.

21.     The defendant KOREA LINE, however, advised that the M/V CHIEF was not able to arrive at Rouen for loading before July 26, 2007.

22.     The M/V CHIEF was not an acceptable alternative for AGROCORP at time because the M/V CHIEF was not in position to load AGROCORP's cargo within the time required under its then existing sales contracts with the buyers of the cargo of peas.

23.     In any event, the defendant KOREA LINE withdrew its offer to present the M/V CHIEF as a substitute for the M/V GLOBAL DISCOVERY.

## AGROCORP MITIGATED ITS DAMAGES, BUT INCURRED DAMAGES AS A CONSEQUENCE OF DEFENDANTS' BREACH OF CHARTER PARTY

24. In order to mitigate its losses, which were occasioned by the defendants' breach of the maritime contract, AGROCORP found it necessary to arrange for shipment extensions from the buyers of the cargo in Pakistan and India.

25. In order to obtain an extension of the shipment dates, AGROCORP was required to pay GAFTA extension penalties so as not to lose its sale contracts.

26. In order to mitigate its losses, AGROCORP further arranged to charter another vessel, the M/V VINASHIN SUMMER, to carry its cargo from France to Pakistan and India.

27. On July 26, 2007, AGROCORP chartered the M/V VINASHIN SUMMER from Pan United Carrier Pte. Ltd . to carry its cargo from France to Pakistan and India.

28. In order to ship its cargo on board the M/V VINAHIN SUMMER, AGROCOPR was required to pay a rate of freight, i.e. $67.00 per metric ton, which was higher than that which had been agreed for the carriage on board the M/V GLOBAL DISCOVERY.

29. The M/V VINASHIN SUMMER loaded the AGROCORP cargo on August 7, 2007.

30. The M/V VINASHIN SUMMER was a smaller vessel than was the M/V GLOBAL DISCOVERY, and the M/V VINAHIN SUMMER was only able to load

19,700 tons of cargo as opposed to the 21,000 tons of cargo that was to have been carried on the M/V GLOBAL DISCOVERY.

32. The AGROCORP cargo was carried and discharged safely by the M/V VINASHIN SUMMER to Karachi, Pakistan and Mumbai, India.

### AGROCORP IS PREPARING TO PROSECUTE ITS CLAIMS AGAINST THE DEFENDANTS IN LONDON ARBITRATION

33. In accordance with the terms and conditions of the charter party agreement in respect of the M/V GLOBAL DISCOVERY, AGROCORP is preparing to initiate arbitration proceedings in London against the defendants in order to prosecute its claim for breach of charter party and recover damages from the defendants.

34. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration.

35. As best as can now be estimated, the plaintiff AGROCORP expects to recover the following amounts in London arbitration from the defendants GLOBAL SEA and KOREA LINE:

| | | |
|---|---|---|
| A. | Principal Claim | |
| | (i) Freight Differential between the M/V GLOBAL DISCOVERY and the M/V VINASHIN SUMMER: ($67.00 less $64.50 = $2.40 pmt x 19,800) | $ 47,520.00 |
| | (ii) GAFTA Sales extension penalty: (1.5% x $371.00 x 8,800 mt) | $ 48,972.00 |
| | (iii) Loss of Profit (1,400 tons not carried) | $ 23,280.00 |
| | Total Principal claim | $119,772.00 |
| B. | Estimated interest on claims: 3 years at 8%, compounded quarterly | $ 32,127.86 |
| C. | Estimated solicitors' fees: | $ 30,000.00 |
| D. | Estimated arbitration costs/expenses: | $ 15,000.00 |
| **Total** | | **$196,899.86** |

7

## PRAYER FOR RELIEF

36. Notwithstanding the fact that the liability of the defendants is subject to determination by arbitration in London, there are now, or will be during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the defendants within this District and held by various parties, as garnishees.

37. Plaintiff AGROCORP believes that some of these assets, *to wit*: bank accounts; payments from the purchasers of other cargoes; freight and/or hire payments being made to other vessel owners U.S. dollars; freight and hire payments from other charterers or shippers of cargo; and/or Clearing House Interbank Payment System (CHIPS) credits; and/or funds being transferred through intermediary banks are located in this District in the possession of garnishees, namely banks or financial institutions located in New York.

38. As set forth in the accompanying affidavit of Owen F. Duffy, the defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

39. Because this Verified Complaint sets forth an *in personam* maritime claim against the defendant and because the defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the requirements for a Rule B attachment and garnishment are met and plaintiff seeks the issuance of process of maritime attachment so that it may obtain security for its claims against the defendant

and/or *quasi in rem* jurisdiction over the property of the defendant, in the event that the defendant challenge the jurisdiction of the London arbitrators, so that an eventual judgment and/or award can be satisfied.

40. In addition to an attachment in the full amount of the claim as set forth above, plaintiff also seeks an attachment over an additional sum to cover awardable attorneys' fees and costs which are recoverable in arbitration pursuant to the London Maritime Arbitration Association's rules.

WHEREFORE, Plaintiff prays as follows:

A. That the defendants be summoned to appear and answer this Verified Complaint;

B. That the defendants not being found within this District, as set forth in the Affidavit of Owen F. Duffy, then all of its assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the defendant within this District up to the amount sued for herein be attached pursuant to Supplemental Rule B and to pay plaintiff's damages;

C. That this Court retain jurisdiction over this matter through the entry of a judgment either by this Court, and/or the London arbitration panel, so that judgment may be entered in favor of plaintiff for the amount of its claim with costs, *i.e.* **US $196,899.86** and that a judgment of condemnation and sale be entered against the property arrested and attached herein in the amount of plaintiff's claim, plus costs to be paid out of the proceeds thereof; and

D. That plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
       December 19, 2007

                                  CHALOS, O'CONNOR & DUFFY, LLP
                                  Attorneys for Plaintiff,
                                  AGROCORP INTERNATIONAL PTE LTD.

By: _____
                                  Owen F. Duffy (OD-3144)
                                  George E. Murray (GM-4172)
                                  366 Main Street
                                  Port Washington, New York 11050
                                  Tel: (516) 767-3600 / Fax: (516) 767-3605

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
AGROCORP INTERNATIONAL PTE LTD.
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AGROCORP INTERNATIONAL PTE LTD.

                       Plaintiff,

            v.

GLOBAL SEA INTERNATIONAL SA, and,
KOREA LINE CORP.

                   Defendants.
------------------------------------------------------------X

07 CV _____ (____)

**VERIFICATION**

STATE OF NEW YORK    :
                              : ss.
COUNTY OF NASSAU    :

      BEFORE ME, the undersigned authority, personally came and appeared Owen F. Duffy who, after being duly sworn, did depose and state:

      1.      That he is a partner in the law firm of Chalos, O'Connor & Duffy LLP, counsel for the Plaintiff, AGROCORP INTERNATIONAL PTE LTD., herein;

      2.      That he has read the foregoing complaint and knows the contents thereof;

      3.      That he believes the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys; and

4. That the reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers' verification could not be obtained within the time constraints presented by the circumstances of this case.

Dated: Port Washington, New York
December 19, 2007

          CHALOS, O'CONNOR & DUFFY, LLP
          Attorneys for Plaintiff,
          AGROCORP INTERNATIONAL PTE LTD.

By: _____
          Owen F. Duffy (OD-3144)
          366 Main Street
          Port Washington, New York 11050
          Tel: (516) 767-3600
          Fax: (516) 767-3605

Subscribed and sworn to before me this
December 19, 2007

_____
Notary Public, State of New York

GEORGE E. MURRAY
Notary Public, State of New York
No. 02MU6108120
Qualified in New York County
Commission Expires April 12, 2008

2